UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X,
JERMAINE DIXON,

                            Petitioner,                      **MEMORANDUM & ORDER**

     -against-                                                  09 CV 4530 (RJD)

UNITED STATES OF AMERICA,

                            Respondent.
------------------------------------------------------X
DEARIE, District Judge.

Pro se petitioner Jermaine Dixon, who pled guilty to narcotics trafficking and is now serving a thirty-year sentence, moves pursuant to 28 U.S.C. § 2255 to vacate that sentence. For the reasons set forth below, the application is denied and the petition is dismissed.

## BACKGROUND

The Court assumes the parties' familiarity with the substantial record, including the two Second Circuit decisions in this case, <u>United States v. Dixon</u>, 175 F. App'x 384 (2d Cir. Mar. 28, 2006) and <u>United States v. Dixon</u>, 262 F. App'x (2d Cir. Jan. 23, 2008), <u>cert</u>. <u>denied</u>, 555 U.S. 864 (Oct. 6, 2008), as well as this Court's recent memorandum and order denying Dixon's motion for a reduction of sentence under 18 U.S.C. § 3582(c). *United States v. Dixon*, 01-CR-984, slip. op. (July 18, 2012).

## GOVERNING LEGAL STANDARDS

Relief is available under 28 U.S.C. § 2255 "only for a constitutional error, a lack of

jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cuoco v. United States, 208 F.3d 37, 30 (2d Cir. 2000) (internal quotations and citations marks omitted). The Court's discretion to grant relief under section 2255 is to be exercised sparingly, for such applications "are in 'tension with society's strong interest in the finality of criminal convictions.'" Elize v. United States, 2008 WL 4425286, *5 (E.D.N.Y. Sept. 30, 2008) (NGG) (internal citations omitted). See also Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993) ("the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness," and "[t]hose few who are ultimately successful [in obtaining habeas relief] are persons whom society has grievously wronged and for whom belated liberation is little enough compensation") (internal quotations and citations omitted).

Under the rules that "'the courts have established [ ] that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack,'" id. (internal Supreme Court citations omitted), only a limited category of claims is even cognizable in a motion under 2255. See United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009) ("2255 petition cannot be used to relitigate questions *which [sic] were raised and considered on direct appeal*") (internal quotation and citations omitted) (emphasis added), cert. denied, __ U.S.__, 130 S. Ct. 1090 (2010); United States v. Frady, 456 U.S. 152, 165 (1982) (section 2255 may not be used to challenge the legality of matters that were *not* first raised on direct appeal) (emphasis added); Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) (same). In short, "a habeas petition may not raise claims that *were—or could have been—*litigated on appeal." Slevin v. United States, 98 CV 904, 1999 WL 549010, *2 (S.D.N.Y. July 28, 1999) (emphasis added).

Claims of ineffective assistance of counsel, of course, "may be brought in a collateral

2

proceeding under § 2255 whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003). But a petitioner may not avoid the bar on re-litigating appellate claims merely by restyling them as alleged errors of counsel. See generally Riascos-Prado v. United States, 66 F.3d 30, 34 (2d Cir. 1997) (barring 2255 petitioner from raising an ineffective assistance of counsel claim that was "simply a slightly altered rearticulation of a claim that was rejected on his direct appeal"); Slevin, 1999 WL 549010 at *4 ("Petitioner cannot in a § 2255 motion reargue the substance of claims the Court of Appeals has already rejected simply by introducing those claims with 'Counsel failed to argue that. . ..' Such claims clearly fall under the 'slightly altered rearticulation' standard of Riascos–Prado, 66 F.3d at 34, and the Court accordingly declines to reexamine their merits").

## DISCUSSION

The petition and two supporting memoranda of law, exceeding fifty pages in length, advance six separately numbered "Grounds."[1] Each alleges that Dixon's attorney Joel Stein, Esq. was ineffective in his handling of Guidelines-related matters at Dixon's resentencing in June 2006.

**A.     Ground One.**

In Ground One, Dixon claims that "there is no indication in the established record that the court ever adequately considered the factors set forth in 18 U.S.C. § 3553(a), or how, in reaching its decision(s) on sentencing, . . . did [sic] the court consider, at any time, whether to impose a

---

[1] "Ground Seven" is not an independent basis for habeas relief but merely asks for a hearing on the other six grounds. In light of the Court's view of the merits of those grounds, as set forth in this memorandum, no hearing is required. See Williams v. United States, 07 CV 1804 (RJD), 2012 WL 1116403, *5 (E.D.N.Y., Mar. 30, 2012) (no hearing required on section 2255 application where no material facts in dispute) (collecting applicable Second Circuit authority).

3

Guidelines sentence or a non-Guideline sentence in accordance with its [r]emand instructions." The ineffectiveness prefix to this claim asserts that "[c]ounsel was . . . patently ineffective . . . for failing to properly object to the district court going beyond the specific reasons for remand" and "counsel never sufficiently challenged the court in any way in these regards." Pet. at 5(a), (c).

      Dixon's assertions directly contradict what actually occurred at the re-sentencing, which occurred a year after the Supreme Court issued Booker v. United States, 543 U.S. 220 (2005). Contrary to what Dixon claims, (i) Section 3553(a)'s factors figured prominently in the post-Booker proceeding, see, e.g., Tr. June 9, 2006 at 14 ("The Court: I've gone one by one down the list of 3553(a) sentencing criteria, that's the harder question, what do I do? I imposed a life sentence originally"); (ii) Dixon's counsel *did* expressly address the grounds upon which the Court could impose a non-Guidelines sentence, see Tr. June 9, 2006 at 10-12, and (iii) most critically, the Court *did* consider 3553(a) factors—including Dixon's age, partial early cooperation, and his late rumblings of remorse—when *reducing Dixon's then-advisory Guidelines sentence of life imprisonment to a non-Guidelines sentence of 30 years*. See Amended Judgment, Oct. 16, 2006, Statement of Reasons ("A sentence of 30 years is at variance with the advisory guidelines range of life imprisonment . . . the Court chooses to moderate the sentence primarily because of the defendant's age at the time of his criminal conduct [and because] the defendant did cooperate with federal authorities to a limited extent. And at the time of sentence, the defendant did express some remorse for his actions which the court interpreted as genuine.").

      In sum, Ground One's allegations do not present a basis for section 2255 relief because they reflect a fundamental misapprehension of the resentencing proceedings. Further, to the extent that Dixon seeks to fault his attorney in a broader sense, for falling short in some

4

unspecified respect in his handling of Guidelines-related questions, he would be unable to show that he was prejudiced within the meaning of Strickland v. Washington, 466 U.S. 668 (1984), because the Court ultimately did not impose a Guidelines sentence.  See Strickland, 466 U.S. at 694, 697 ("prejudice" means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies").

**B.    Ground Two**

Ground Two is largely repetitive of Ground One and to that extent is without merit for the reasons already discussed.   Buried within Ground Two, however, are two other discernible fragments of claims.  The first is that counsel was "not sufficiently prepared to properly defend [Dixon] against the unreasonable and prejudicial [sentencing] enhancements" relating to the murder of Alphonso Gooden.  This allegation does not provide a basis for habeas relief.   As Dixon must know, the sentencing issues within this ineffectiveness claim have already been addressed by the Second Circuit on Dixon's appeal from his re-sentencing.  See Dixon, 262 F. App'x at 301.  The Circuit held, inter alia, (i) that this Court "reasonably found that the incident of the [Gooden] homicide was either part of a common scheme or the same course of conduct as Dixon's instant offense, thus satisfying the standard for relevant conduct under U.S.S.G. § 1B1.3(a)(2), (ii) that "the district court did not clearly err in enhancing Dixon's 10-year statutory minimum based upon the homicide as relevant conduct," (iii) that there was "no clear error in the district court's conclusion that the theft of cocaine constituted relevant conduct under U.S.S.G. § 1B1.3," and (iv) that "ample evidence supports the district court's finding that Dixon committed

5

premeditated murder." Id.[2]

Dixon may not relitigate these questions in a section 2255 petition merely by bracketing them in a barebones assertion of attorney ineffectiveness. Riascos-Prado, 66 F.3d at 34; Slevin, 1999 WL 549010 at *4. Even if the claim were cognizable as a bona fide assertion of attorney ineffectiveness, the Court would reject it on its face as frivolous. Counsel *did* vigorously argue that murder should not considered relevant conduct under the Guidelines, see Tr. June 6, 2006 at 5-7, and Dixon has not suggested the specific manner in which the performance of counsel was allegedly deficient. More critically, Dixon cannot show that he was prejudiced in a proceeding that reduced his sentence from life to thirty years.

The other discrete claim in Ground Two is that that counsel was ineffective because he allegedly "should have . . . pled [Dixon] to the drug offense that carries the lowest statutory maximum possible." Petition at 5(e). This barebones assertion, standing alone, fails on the ground of speculativeness, for there is no evidence suggesting that the government ever would have made such an offer.

To the extent this single assertion, lacking any factual support, could be construed as invoking Missouri v. Frye, __U.S. __, 132 S. Ct. 1399 (2012) (counsel ineffective for failing to

---

[2] The Circuit's decision included a detailed marshaling of the relevant evidence: "The record establishes that Dixon committed the homicide in conjunction with other members of the narcotics conspiracy to which he pled guilty; the homicide had a common purpose with the narcotics conspiracy in that the homicide allowed Dixon and his fellow conspirators to retain a large sum of stolen narcotics and sell them as part of their operation; and the homicide was the direct result of a robbery of narcotics by Dixon's brother from a rival drug trafficker, a common practice of the Patio Crew. Further, to the extent that Dixon disputes that the narcotics were stolen from a competitor or that the homicide was motivated by independent threats to his mother rather than by any relationship to buying, selling, or stealing cocaine, the facts as found by Judge Dearie establish the contrary." Id. The Circuit also noted that "Agent DeMartino testified that Dixon admitted during interviews with the government that he knew of his brother's robbery before the homicide, and that this dispute led to Gooden's murder" and further, that "Dixon's co-conspirator, Dexter Bailey, corroborated this testimony at Dixon's sentencing hearing." Id.

6

communicate to defendant a written plea agreement before it expires), or Lafler v. Cooper, __ U.S. __, 132 S. Ct. 1376 (2012) (counsel ineffective for wrongly advising defendant to reject plea offer), the claim would still not provide a basis for habeas relief. Dixon's conviction became final three years before these decisions were issued, and neither has been held to have retroactive effect. See Ortiz v. United States, 12 cv 5326, 2012 WL 5438938, at *2 (E.D.N.Y. Nov.7, 2012) (Cogan, J.) ("nearly every court to have addressed the issue has held that Frye did not create a new constitutional right to be applied retroactively to cases on collateral review; it merely applied *Strickland v. Washington* ... to a particular set of circumstances, i.e., the obligation of defense counsel to advise a defendant of plea offers") (compiling cases); id. at *3, n.1 (*3 "*Lafler* did not create a new constitutional right; it only decided 'how to apply Strickland's prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial'" (quoting Lafler, 132 S. Ct. at 1384)). See generally Tyler v. Cain, 533 U.S. 656, 663 (2001) ("Quite significantly . . . the Supreme Court is the only entity that can "ma[k]e" a new rule retroactive. The new rule becomes retroactive, not by the decisions of the lower court or by the combined action of the Supreme Court and the lower courts, but simply by the action of the Supreme Court.").

## C. Ground Three

In Ground Three, Dixon principally alleges that "[t]his Court on [r]emand was specifically instructed, by the Second Circuit Court of Appeals, 'to consider, inter alia, the factors set forth in 18 U.S.C. § 3553(a), and whether to impose a Guidelines or non-Guidelines sentence.' [It is] contended that either consideration could and/or probably would have resulted in a considerably less severe penalty exposure, if the appellate court's instructions had been fully complied with and properly applied, and had counsel competently represented the issues raised."

7

Petition at 5(g). These assertions are in essence the same as those in Ground One, and therefore fail to provide a basis for habeas relief for the reasons already discussed.

The other discernible claim within the Ground Three narrative is that counsel failed to "properly challenge the court's [purported] failure(s) to state with specificity and clarity, on the record, its factual findings and legal determinations . . . with regard to Petitioner's Base Offense Level and the corresponding sentence," and that "counsel's failure(s) in these regards[] denied Petitioner the fair opportunity to determine what grounds were actually appealable." Petition at 5(g). These are frivolous assertions.

First, the Second Circuit has already rejected Dixon's challenge to the specificity of this Court's rulings at resentencing, United States v. Dixon, 262 F. App'x at 301 n. 1 ("We likewise reject Dixon's challenge to the specificity of Judge Dearie's rulings. After reviewing the record, we conclude that Judge Dearie made sufficient findings of fact as to how the homicide was related to the charged offense"), so Dixon is barred from attempting to re-litigate that issue on section 2255, either directly, Pitcher, 559 F.3d at 123, or restyled as an ineffectiveness claim. Riascos-Prado, 66 F.3d at 34; Slevin, 1999 WL 549010 at *4.

Further, Dixon's claim that counsel hampered his ability "to determine" appealable issues is likewise foreclosed by the Second Circuit's decision, which delineates the several distinct, highly specific sentencing issues that Dixon presented on his appeal. Dixon, 262 F. App'x at 300 ("Dixon challenges his sentence on three grounds: (1) the homicide of Alphonso "Jukuta" Gooden does not constitute 'relevant conduct' for which he should receive an enhanced sentence under U.S.S.G. § 1B1.3; (2) there was an insufficient basis for the district court's finding that the theft of cocaine by Dixon's brother prior to the Gooden homicide constituted relevant conduct under U.S.S.G. § 1B1.3; and, in the alternative, (3) there was insufficient evidence to establish

8

that he acted with premeditation in committing the killing, as required to prove murder in the first degree for sentencing purposes"). These claims reflect the themes that Dixon has pressed throughout all phases of his sentencing proceedings; he nowhere hints at what other possible appellate issue he could or would have pursued but for counsel's alleged ineffectiveness at the resentencing proceeding. He therefore cannot show that he suffered any cognizable prejudice under Strickland, 466 U.S. at 694, 697.

**D.   Ground Four**.

In Ground Four, Dixon (i) makes several references to "potential constitutional claims" relating to sentencing that he may exist "in view of developing law(s)"; (ii) complains that counsel failed to challenge "the judge[-]found facts"; and (iii) asserts that counsel should have "recognized and sufficiently challenged the potential constitutional violations of Petitioner's right(s) under the Sixth Amendment that resulted from the Supreme Court's recent decisions in this regard." Petition at (6). These concerns are speculative and unfounded: elsewhere in Ground Four, Dixon concedes that "the record shows that, after Remand, Petitioner was, in fact, properly resentenced under the now Advisory ["ONLY!"] [sic], application of the United States Sentencing Guidelines." Petition at (6).[3]

To the extent Dixon's intent is to invoke Apprendi v. New Jersey, 530 U.S. 466 (2000), his claim would likewise fail because, while he received a sentence of thirty years, the applicable

---

[3] To the extent Dixon seeks to fault counsel for failing to raise a constitutional challenge to the sentencing scheme as a whole, he is factually mistaken: counsel did make such a claim in advance of Dixon's initial sentencing. See Sentencing Memorandum dated August 13, 2004 (ECF #19) (arguing, pre-Booker, that "[i]f the [Supreme ]Court decides that Blakely applies to the Sentencing Guidelines, then the enhancement based upon the shooting of Alphonso Gooden cannot be applied to the defendant's offense level. The defendant was never tried in federal court for this offense and he did not admit to it during his plea allocution"). Any "potential" claims Dixon might have had relating to the constitutionality of the sentencing scheme were settled by Booker, which, as noted, was the law that governed his re-sentencing.

statutory maximum for the criminal conduct to which he pled guilty, conspiring to distribute and possess in excess of 50 grams of cocaine base, is life. See 21 U.S.C.§ 841(b)(1)(A); Blakely v. Washington, 542 U.S. 296, 303 (2004) ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.").

### E.  Ground Five.

Ground Five's caption asserts that "[T]he Court Did in Fact Err[ed] . . . Where It Failed to Properly Consider a Non-Guidelines Sentence as Instructed by the Appellate Court on Remand." Petition at 5(c). This claim repeats the assertions in Ground One and fails for the reasons already discussed. No other discrete claims not already addressed appear in the body of Ground Five.

### F.  Ground Six

In Ground Six, Dixon again claims that "[t]his court, during the resentencing proceedings, limited its scope of consideration and, again, failed to make findings that would justify the thirty (30) year(s) term of imprisonment imposed in this case, where the court failed again to conduct its own review of the Sentencing Guidelines, and never considered a non-Guideli[ne]s sentence." Petition at 6(c). These allegations are repetitive of others already disposed of and require no further discussion.

In sum, none of the discrete claims discernible from Dixon's overlapping narratives presents a viable basis for relief under section 2255.

### G.  Dixon's Supplemental Filing

In a supplemental filing, Dixon addresses what he refers to broadly as "newly discovered

evidence" relating to actual testimony by Trevor Brown, and proffered testimony by Dexter Bailey—both government cooperators in the Patio Crew investigation—on behalf of Derrick Deacon in a state court proceeding in which Deacon seeks to overturn his conviction for the murder of Anthony Wynn on the ground of innocence.

The only discernible claim, if any, in this "supplemental" submission is a request for copies of certain materials, including "all of the recent debriefings of Trevor Brown and Dexter Bailey" and "any testimony that was given by Trevor Brown . . . that took place in the state court proceedings." The government does not state whether it is in possession of any other interview reports but reports that, "to the extent that Dixon's request could be ultimately deemed some type of post-conviction claim for Brady- or Giglio-type material, and because Deacon's state court proceedings were public and the government now has access to those proceedings, the government is forwarding a copy of those proceedings to Dixon." Whatever Dixon hoped these materials might show, he has not formally interposed a claim based on them. Accordingly, the supplemental filing does not require further judicial action.

## CONCLUSION

Jermaine Dixon's application for relief under 28 U.S.C. § 2255 is denied in its entirety. Because Dixon has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

SO ORDERED.

Dated: Brooklyn, New York
      February 12, 2013

/s/ Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge